No. 6181.

## J. W. FENNELL *v.* SEGUIN STREET RAILWAY COMPANY.

1. NEGLIGENCE.—The statute requiring farmers, gardners and planters to make a sufficient fence about cleared land in cultivation, was designed for the protection of crops inside of the inclosure against stock running at large. The failure to keep a fence around a growing crop, which crop in its nature could not be regarded as dangerous to stock would not render the owner of the ground in possession liable for injury which might result to animals running at large that had entered and been injured by eating of the crop. The failure to erect or keep up the fence would not, under such circumstances, be regarded as negligence.

APPEAL from Gaudalupe. Tried below before the Hon. Geo. McCormick.

*W. E. Goodrich,* for appellant: The liability of a party for damages to another, for such party's negligence, is not dependent upon what is considered generally hurtful. (1 Sutherland on Damages, 25, 47; Childress v. Yourie, Meigs, Tenn., 561; Snellings v. McDonald, 14 Allen, Mass., 292.)

Though to *feed* millet while green might be generally considered hurtful to cattle, yet for cattle to get to it in the patch where growing and eat their fill might be.

Where a pecuniary loss falls upon a party by the negligence of another, the latter is amenable to the former for the loss sustained. (Eames v. T. & N. O. R. R., 63 Texas, 660.)

No briefs for appellee have reached the Reporter.

WALKER, ASSOCIATE JUSTICE. This suit was begun by appellant in a justice's court, where judgment was rendered for the plaintiff. Appeal was taken to the county court; the county judge being disqualified, the case was transferred to the district court, and from a judgment for defendant, the plaintiff below appealed to this court.

The cause of action is this: The defendant rented a spot of ground, and in putting up its depot left the fence down. On the ground was growing sorghum or sugar millet, which was green, growing about eighteen inches high, and the second

crop, and in September, 1885, the plaintiff's cow got into the lot, ate of the green millet, and died therefrom.

The fourth paragraph of the findings by the court is as follows: "The evidence showed that such cane was generally grown in this section by farmers, and by persons owning lots of ground in this city, for food for stock, and that to feed it when green was not generally considered hurtful to cattle, although there was some evidence showing its dangerous character when eaten under circumstances shown in this case."

As matter of law, the court held "that the leaving the fence down by defendant was not such carelessness on its part as to render the company liable for the loss of plaintiff's cow."

There is no general law in Texas prohibiting owners from permitting their cattle to run at large. The fence law (article 2431, Revised Statutes) requiring that "every gardener, farmer or planter, shall make a sufficient fence about his cleared land in cultivation" (and defining a sufficient fence), evidently looks to the protection of the crops inside the inclosure against stock running at large; for it is enacted (2434), "if it shall appear that the fence is insufficient, then the owner of such cattle, etc., shall not be liable to make satisfaction for such damages."

As cattle may lawfully run at large, the question arises, What duty does the law impose upon land owners for the protection of such stock. "The generel rule of law is that he who has property should so use it as not to injure the property of his neighbor." Upon this has been based the rule that "a person who opens a shaft, and thus makes an alteration in the normal state of things, should take proper steps to fence it to prevent injury happening to him who had previously the right to the use of the surface of the soil." (Wharton on Neg., sec. 825, note.)

Under statutes providing for partition fences between land owners, a failure on the part of one party to keep in repair his part, it has been held that if domestic animals of his neighbor should wander upon his lands, invited by his own neglect, and these should fall into pits or otherwise receive injury, he would be responsible for this injury as one occurring proximately from his own default. (Cooley on Torts, p. 338.)

Should it be conceded that cattle have the right to run at large upon all unfenced lands, and even upon lands not inclosed by sufficient fences; and that the law imposes upon the

land owner the duty of fencing against injury from any change in the surface of his grounds by excavations or by erection of unsafe buildings or structures of any kind, or from permitting them to become unsafe, still this duty of proper care only arises to prevent a threatened and probable danger. If the growing of sorghum be a change of the land from safe to unsafe pasture, the rule above cited probably could apply.

The finding of the court cited above may be contended as equivalent to finding that the feeding of sorghum was not dangerous, though there was some testimony otherwise. If there be no danger to be guarded against, the law would not impose proper care, or, indeed, any care, upon the owner of the premises.

Appellant insists that the finding is not supported by the testimony. The testimony is conflicting, but, according to the finding by the judge, the same effect as to a verdict, it will not be disturbed.

This case is distinguished from Edwards v. Chisholm, 6 Southwestern Reporter, 558, in which the presence of negligence of defendant, upon which the judgment followed, was not ascertained as a fact, but only as a conclusion of law. Here the finding of the judge ascertained as a fact the harmless nature of the sorghum; from which finding as a fact negligence, which is want of proper care, is negatived. No care being needed, there could be no neglect or want of it.

There being no error in the record, the judgment below is affirmed.

*Affirmed.*